UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARRYL POLLARD,

        Plaintiff,                        Case No. 1:21-cv-824

v.                                              Honorable Janet T. Neff

UNKNOWN ORTEZ et al.,

        Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown Parties. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's First Amendment religious freedom and retaliation claims and his Fourteenth Amendment substantive due process claims.

**Discussion**

**I.  Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officers Unknown Ortez and Unknown Mawer; Sergeants Unknown Lethum, Unknown Kassa, and Unknown Thayer; Lieutenant Unknown Swanson; and Unknown Parties named as John and Jane Does.[1]

Plaintiff alleges that on June 19, 2020, at approximately 10:13 a.m., Plaintiff asked Defendant Mawer for his prayer rug, stating that he had not prayed properly since May 27, 2020, which was the day he arrived in segregation. Defendant Mawer denied Plaintiff's request and told him to pray like "regular people." (Comp., ECF No. 1, PageID.6.) Plaintiff responded by taking his food slot hostage[2] until he could speak to a sergeant. This resulted in a chemical agent being used on Plaintiff. Apparently, Plaintiff was also placed in restraints, although he fails to specifically allege the time that he was placed in restraints or the exact nature of his restraints.

Following Plaintiff's exposure to the chemical agent, he was not allowed to clean his cell or to shower. Plaintiff states that he reported the issue to Defendants Ortez, Lethum, Mawer, and unknown staff members.[3] Between 12:20 and 12:45 p.m., Defendant Ortez told Plaintiff that no unit porters would be called in just to clean the chemical agent from Plaintiff's cell, and that he

---

[1] Plaintiff identifies the "Unknown Parties" as unknown ranking c/o Jane Doe, John Doe, and Jane Doe (Compl., ECF No. 1, PageID.1, 4.)

[2] An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x. 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011) (report and recommendation adopted 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011)).

[3] These unidentified staff members are not named as Defendants in this action.

2

would just have to deal with it. A while later, Defendant Lethum came by Plaintiff's cell and asked if he wanted to be removed from the restraints. Plaintiff said "yes," but Defendant Lethum then turned to someone else in the hall and said that Plaintiff had refused to come out of restraints. Plaintiff states that during this time his skin was burning. Following this, Defendants Ortez, Lethum, Mawer, Swanson, Kassa, and Thayer all refused to respond to Plaintiff's requests for help and denied him use of the restroom. Plaintiff states that each of these Defendants also lied and claimed that Plaintiff had refused to come out of his restraints. Plaintiff repeatedly requested to use the restroom and complained that he was in severe pain from the chemical agent, but Defendants refused to help Plaintiff on at least four occasions that day. Plaintiff states that he was not allowed out of restraints to use the restroom until the third shift came on duty. Plaintiff claims that Defendants were motivated by a desire to retaliate against him for requesting his prayer rug.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Unknown ranking corrections officers

Plaintiff makes no allegations against Defendants Jane Doe or John Doe. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to

4

dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants Jane Doe or John Doe in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Because Plaintiff describes Defendants Jane Doe and John Doe as "ranking" officers, it is possible he contends they are responsible for the conduct of the other Defendants as supervisors. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556

U.S. at 676. Plaintiff has failed to allege that Defendants Jane Doe or John Doe engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. First Amendment Free Exercise

Initially, Plaintiff claims that Defendant Mawer violated his First Amendment right to exercise his religious beliefs when he refused to allow Plaintiff to use his prayer rug and told Plaintiff to pray like "regular people." (Comp., ECF No. 1, PageID.6.) The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff's claim regarding the denial of a prayer rug is entirely conclusory. Plaintiff fails to allege facts showing that he had a sincerely held religious belief that required him to use a prayer rug to pray or to even specify the nature of his religious affiliation, if any. Nor does Plaintiff allege that he was unable to use a substitute, such as a towel, in lieu of his prayer rug. *See Covington v.*

*Cadogan*, No. 1:18-CV-511, 2019 WL 2949845, at *3 (S.D. Ohio July 9, 2019), *report and recommendation adopted*, No. 1:18CV511, 2019 WL 4540982 (S.D. Ohio Sept. 19, 2019) (holding that where the prison allows for a towel to be used as a prayer rug while a prisoner is in restrictive housing, his First Amendment rights were not violated by the denial of a prayer rug). Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's free exercise claim against Defendant Mawer is properly dismissed.

        **C.**      **First Amendment Retaliation**

Plaintiff claims that Defendants' conduct was motivated by a desire to retaliate against him for asking for his prayer rug. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

7

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening."] (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

In this case, Plaintiff alleges that he asked for his prayer rug, but concedes that when his request was denied, he took his food slot hostage. As noted above, this behavior violates prison rules. *Annabel*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5. Following Plaintiff's violation of prison rules, he was subjected to a chemical agent and was placed in restraints. Plaintiff fails to allege any facts indicating that the subsequent conduct of the named Defendants was motivated by his request to use a prayer rug to pray. Accordingly, his speculative allegation fails to state a claim.

### D. Eighth Amendment

Plaintiff's claim involving the use of restraints and chemical agents must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible officials," (4) and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6–7 (citing *Whitley*, 475 U.S. at 321); *Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346.

In numerous cases, the Sixth Circuit has held that restraints were penologically justified where in light of the inmate's disruptive behavior, the inmate continued to pose a threat. *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994) (holding that significant threat of further destructive behavior justified application of top-of-bed restraints against inmate); *Harris v. Ohio Dep't of Rehab. & Corr.*, No. 91-3920, 1992 WL 56999, at *2 (6th Cir. Mar. 24, 1992) (requiring inmate to wear restraint belt during visits was penologically justified); *Boswell v. Vidor*, No. 89-2372, 1990 WL 143501, at *1 (6th Cir. Oct. 2, 1990) (placing inmate in full restraints for twelve hours was justified where inmate had disobeyed a direct order by repeatedly refusing to return plastic gloves given to him for cleaning his cell); *Syncate-El v. Toombs*, No. 92-1421, 1992 WL 301270, at *2 (6th Cir. Oct. 21, 1992) (holding that the use of body chains during non-contact visits was justified in light of significant threat of further assaultive behavior given inmate's history of disruptive behavior); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995) (concluding that top-of-bed restraints were appropriate even after inmate discontinued his earlier abusive, disruptive, and threatening behavior).

The use of a chemical agent to control a disruptive prisoner and to restore order in the prison does not violate the Eighth Amendment. *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014) (holding that the use of a chemical agent after a prisoner repeatedly refuses to obey orders does not violate the Eighth Amendment) (citing *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that a defendant's use of pepper spray on a prisoner who refused to leave the shower did not violate the Eighth Amendment)); *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (noting "that the use of mace to control a prison inmate is not malicious or sadistic"); *Miller v. Palmer*, No. 99-2352, 2000 WL 1478357, at *2 (6th Cir. Sept. 27, 2000) (concluding that officers did not violate the Eighth Amendment when prisoner "refused to remove his arm from his food slot[,] refused to allow officers to place him in soft restraints[, and was] given several opportunities to comply with the officers' orders before chemical agents were used").

Plaintiff states that he was subjected to a chemical agent after he took his food slot hostage. However, Plaintiff fails to specify who subjected him to the chemical agent, nor does it appear as if Plaintiff is complaining about the initial use of the chemical agent. Instead, he complains that he was not permitted to mitigate the effects of the chemical exposure. (Compl., ECF No. 1, PageID.5) ("Plaintiff was forced to suffer the negative existence elements of chemical agent by the way of being denied the rights to have the chemical agent cleaned from my cell . . . and denied the rights to shower . . . .").

Similarly, it does not appear that Plaintiff contends his initial placement in restraints violated the Eighth Amendment; rather, he focuses upon Defendants' refusal to remove him from restraints when he indicated he was ready. (*Id.*) ("[D]efendant Lethum . . . stated prisoner refused to come out of restraints . . . all defendants lied that Plaintiff refused to come out of restraints . . . ."). While restrained, Plaintiff states that he was only able to eat like an animal and

10

was not permitted to use the restroom. (*Id.*, PageID.5–6.) Plaintiff claims that Defendants' refusal to allow him to clean his cell or to wash after the use of a chemical agent, and the use of restraints following exposure to the chemical agent violated his rights under the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345–46. The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Although the facts as alleged by Plaintiff support an inference that the initial use of a chemical agent and Plaintiff's initial placement in restraints were penologically justified, Plaintiff's allegations do not support the inference that the justification continued. Plaintiff presents a colorable claim that Defendants intended to punish Plaintiff with the unnecessary and wanton infliction of pain. Accordingly, the Court concludes that Plaintiff's allegations regarding

Defendants' refusal to permit Plaintiff to mitigate the effects of the chemical agent, including "[Plaintiff's] skin . . . burning severely," (Compl., ECF No. 1, PageID.5), and the continuous use of restraints for many hours, state a claim under the Eighth Amendment. Those Eighth Amendment claims against Defendants Lethum, Ortez, Mawer, Swanson, Kassa, and Thayer may not be dismissed on initial review.

E.   **Fourteenth Amendment**

Plaintiff claims that Defendants' conduct violated the Fourteenth Amendment's Due Process Clause. (ECF No. 13, PageID.54.) Presumably, Plaintiff intends to raise a substantive due process claim.[4]

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

---

[4] Alternatively, Plaintiff may refer to the Fourteenth Amendment solely for its incorporation of the relevant protections under the Eighth Amendment, *see Robinson v. California*, 370 U.S. 660, 667 (1962), as applied to the States. In that event, no further discussion of the Fourteenth Amendment claim is required.

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his claims regarding the use of a chemical agent and restraints. *See Graham*, 490 U.S. at 394 (citing *Whitley*, 475 U.S. at 327 (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims)); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (concluding that because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Thus, the standard applicable to that source, the Eighth Amendment right to be free from cruel and unusual punishment, and not the more generalized notion of substantive due process, should be applied. Consequently, Plaintiff's substantive due process claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Unknown Parties will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's First

Amendment religious freedom and retaliation claims and his Fourteenth Amendment substantive due process claims. Plaintiff's Eighth Amendment claims regarding the refusal to permit Plaintiff to mitigate the effects of the chemical spray and the continued physical restraint of Plaintiff against Defendants Lethum, Ortez, Mawer, Swanson, Kassa, and Thayer remain in the case.

      An order consistent with this opinion will be entered.

Dated:   March 3, 2022                    /s/ Janet T. Neff
                                                      Janet T. Neff
                                                      United States District Judge