UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL POLLARD #631074,

               Plaintiff,                        Hon. Janet T. Neff

v.                                     Case No. 1:21-cv-824

HECTOR ORTIZ, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

Presently before me is remaining Defendant Hector Ortiz's Motion for Summary Judgment (ECF No. 58), which is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **DENIED**.

### I.   Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison, sued several MDOC employees pursuant to 42 U.S.C. § 1983 based on events that occurred at the Ionia Correctional Facility (ICF) during his incarceration there in September 2021. Plaintiff's remaining claim in the case is his Eighth Amendment claim against Defendant Ortiz.

#### A.   Complaint Allegations

Plaintiff alleges that on June 19, 2020, at approximately 10:13 a.m., he asked now-dismissed Defendant Mawer for his prayer rug, stating that he had not prayed properly since May 27, 2020, when he arrived in segregation. Mawer denied Plaintiff's request and told him to pray like "regular people." (ECF No. 1 at PageID.6.) Plaintiff responded by taking his food slot

"hostage," *see Erby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002) (explaining a prisoner's act of taking "his food slot hostage"), in order to speak to a sergeant. (*Id.*) Consequently, prison staff used a chemical agent on Plaintiff. Plaintiff alleges that Defendant Ortiz "denied [him] the rights to have the chemical agent cleaned from [his] cell . . . and . . . the right[] to shower." (*Id.* at PageID.5.) Plaintiff alleges that Defendant Ortiz told him that "no unit porters would be called in just to clean the tormenting chemical agent from [his] cell," and that he would just have to "deal with it." (*Id.*) Plaintiff further alleges that later in the day, he told now-dismissed Defendant Leitheim that he wanted to be released from restraints, but Leitheim told some other unknown officer that Plaintiff refused to come out of the restraints. Plaintiff alleges that he repeatedly told Ortiz and other officers that his skin was burning severely, but none of the officers took any action to help him. (*Id.*) Plaintiff states that Defendant Ortiz and other officers refused to respond to his requests for help and denied him use of the restroom. Plaintiff alleges that on more than four occasions, the officers denied his requests for relief from the chemical agent in his cell and to use the restroom. (*Id.* at PageID.6.) Plaintiff states that he was not allowed out of restraints to use the restroom until the third shift staff came on duty later that day. (*Id.*)

**B.   Summary Judgment Evidence**

According to the critical incident report from June 19, 2020, submitted by Defendant Ortiz, at 10:15 a.m., Unit 2 staff reported that Plaintiff had refused staff orders to remove his arm from the food slot in his cell door. (ECF No. 59-3 at PageID.318.) The deputy warden authorized the necessary use of force, and a response team assembled and went to Plaintiff's cell at 11:10 a.m. (*Id.* at PageID.320.) After Plaintiff failed to comply with several commands from staff to remove items he had placed in the food slot and to come to the cell door to be handcuffed, the response team attempted to clear the items from the food slot but Plaintiff pulled them back into the food slot. The response team then administered a burst of chemical agent into the cell. Plaintiff

2

attempted to avoid the chemical spray by blocking the food slot with a blanket and coat, but an officer pulled the blanket out of the food slot and the team issued a second burst of chemical agent. At this point, Plaintiff complied and came to the door. The team then escorted Plaintiff to the shower area, where he was offered, and accepted, a decontamination shower and given clean clothes. Plaintiff resisted when the team attempted to place Plaintiff into restraints, but after holding Plaintiff against the shower wall, the team was able to apply the restraints, including leg restraints. (*Id.* at PageID.320–21.) At 11:46 a.m., Amber Johnson, R.N., assessed Plaintiff and found no respiratory or circulation issues. (*Id.* at PageID.321.) Nurse Johnson observed Plaintiff walking about the cell without difficulty and yelling at staff. She noted that Plaintiff demonstrated no shortness of breath or cough, his respirations "appear[ed] symmetrical and non-labored," and there were no signs of "difficulty breathing." (*Id.* at PageID.335.) Plaintiff was then returned to his cell in restraints. (*Id.* at PageID.335.)

Defendant Ortiz has also submitted an affidavit setting forth his testimony. Ortiz states that he was working in Unit 2 at ICF but was not part of the cell extraction team. (ECF No. 62 at PageID.346.) He further notes that he was not involved with Plaintiff in the shower area or in returning Plaintiff to his cell. (*Id.*) Defendant Ortiz further states that no prisoner in another cell in the unit complained to him about the presence of chemical agent in the air, and he was not aware of any such issue. (*Id.*)

Finally, Defendant Ortiz has submitted Plaintiff's deposition transcript. Plaintiff admitted that, following the use of chemical agent in his cell, he was allowed to take a shower. (ECF No. 59-2 at PageID.280.) However, Plaintiff said that the new clothes he was provided from his cell had chemical agent on them. (*Id.* at PageID.282.) Plaintiff testified that he was placed back into his cell while in restraints and that when he entered the cell, he noticed that it had not been cleaned

because he saw a puddle of the chemical agent and noticed its smell. (*Id.* at PageID.283.) Plaintiff testified that he saw Ortiz on his rounds within 30 minutes after returning to his cell. Plaintiff asked Ortiz if he would get a porter to come clean his cell because there was "pepper spray everywhere," and his skin was burning. (*Id.* at PageID.286.) Plaintiff said that Ortiz responded, "Sorry, we don't call porters in to do things like that." (*Id.*) Plaintiff said that whenever Ortiz passed by his cell on his rounds that afternoon, he asked Ortiz to have someone clean his cell, but Ortiz constantly refused his request. (*Id.* at PageID.287.) Plaintiff said that the chemical agent burned his skin all over his body. (*Id.* at PageID.288.) Plaintiff remained in the restraints until the next shift when the ranking officer removed them. He remained in the contaminated cell for three days and then was allowed to shower. Plaintiff's cell was finally cleaned while he was in the shower. (*Id.* at PageID.289–90.)

Finally, Plaintiff has presented an affidavit from Robert Harrison, a prisoner who was housed in Unit 2 a few cells away from Plaintiff. (ECF No. 1.) Harrison states that he heard Plaintiff complaining for two days that his skin was burning from sleeping on his mattress covered in chemical agent. (*Id.* at PageID.11.)

## II.   Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Discussion

#### A.      Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to

medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As an initial matter, some question exists as to the precise nature of Plaintiff's claim against Defendant Ortiz. Plaintiff alleged in his complaint that Defendant Ortiz denied him the right to have the chemical agent cleaned from his cell and to shower. (ECF No. at PageID.5.) It is undisputed that Defendant Ortiz was not involved with Plaintiff until after Plaintiff had been returned to his cell and that Plaintiff was allowed to shower immediately after the chemical agent was deployed into his cell. Defendant Ortiz's motion is premised, in large part, on these facts. (ECF No. 59 at PageID.255–56.) In his response, however, Plaintiff asserts that Ortiz denied him another shower after being returned to his contaminated cell. (ECF No. 64 at PageID.350.) In his reply, Defendant Ortiz argues that Plaintiff misrepresents the claim he alleged in his complaint because Plaintiff never alleged that he was allowed to shower at some point following use of the chemical agent. Moreover, Ortiz notes, this Court has previously construed Plaintiff's claim as

being that he was not allowed to shower at all to clean the chemical agent from his body. Ortiz contends that Plaintiff cannot amend his complaint through his response to a motion for summary judgment to allege a claim not set forth in his complaint. (ECF No. 65 at PageID.379–80.)

In my judgment, Plaintiff is not raising a new claim. It is true that under Federal Rule of Civil Procedure 8(a), a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). At the same time, it is well established that pro se complaints must be construed liberally and held to less stringent standards than formal pleadings drafted by lawyers. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Plaintiff's deposition testimony elucidates his claim. He confirmed that he did not know whether Ortiz was part of the response team (they were masked) and that his first interaction with him was while Ortiz was doing his rounds after Plaintiff was returned to his cell. (ECF No. 59 at PageID.284–85.) Plaintiff further testified that despite his constant requests to Ortiz to have the chemical agent cleaned from his cell, Ortiz denied his requests. Finally, Plaintiff mentioned his requests to Defendant Ortiz for "another shower." (*Id.* at PageID.295.) When viewed in light of this testimony, Plaintiff's complaint allegations show that all of his claims focused on the events that occurred *after* he was returned to his cell.

Having defined Plaintiff's actual claim, I conclude that a genuine issue of material fact remains on both the objective and subjective prongs. First, Ortiz does not argue, and ample case law supports, that subjecting a prisoner to a cell that has not been decontaminated from chemical agent, or denying him the opportunity and/or means to clean the cell, can satisfy the objective component. *See Genao v. City of New York*, No. 21-cv-303, 2023 WL 4633486, at *14 (S.D.N.Y. June 20, 2023) (holding that the plaintiff's allegations that he was denied a shower, clean clothes,

and was left with residual chemical agents on his body and inside his cell for around 15 hours
suffced to establish a deliberate indifference claim); *Harris v. Godinez*, No. 12-1461, 2018 WL
11304650, at *7 (C.D. Ill. Mar. 16, 2018) (noting case law suggesting that placing the plaintiff in
a cell with only a mattress and pillow which had been doused with pepper spray could satisfy the
objective prong of an Eighth Amendment claim); *Gardner v. Mack*, No. 12-0281, 2015 WL
877249, at *22 (S.D. Ala. Mar. 2, 2015) ("With respect to placing an inmate in a cell that has not
been adequately decontaminated after the use of a chemical agent, the Court notes that such
situations may pose an unreasonable risk to an inmate's health that is serious enough to trigger
inquiry under the Eighth Amendment.") (citing *Danley v. Allen*, 540 F.3d 1298, 1311 (11th Cir.
2008)); *Brown v. Williams*, No. 1:09-cv-792, 2011 WL 386852, at *8 (E.D. Cal. Feb. 3, 2011)
("Defendants would have been on notice of the condition they created through the administration
of a pepper spray grenade in a poorly ventilated cell and the need to take proper measures to ensure
that the painful effects of the pepper spray would not effect [sic] Plaintiff after he was returned to
his cell.") (citing *Clement v. Gomez*, 298 F.3d 898, 904–05 (9th Cir. 2002)). Although Ortiz denies
noticing any chemical agent smell in Plaintiff's cell, Plaintiff's testimony that chemical agent
remained in his cell and on his mattress and caused burning all over his body suffices to present a
jury issue on the objective prong. Similarly, Plaintiff's testimony that Ortiz denied his repeated
requests that the chemical agent residue be cleaned from his cell and his request for a shower
suffices to create a genuine issue of fact that Ortiz subjectively ignored the risk of harm to
Plaintiff.[1]

---

[1] Plaintiff raises two arguments in his response which do not factor into my analysis. First, he
points out that the officers' statements that are part of the critical incident report do not attest to
the fact that his cell had been cleaned. (ECF No. 64 at PageID.353.) As Ortiz correctly notes, there
is no indication that the officers who were part of the response team would have been responsible
for cleaning the chemical agent from cell. Nonetheless, Plaintiff's own testimony establishes that

### B.    Qualified Immunity

Ortiz also claims that he is entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. An issue of fact remains as to whether Ortiz was deliberately indifferent to the effects of the lingering chemical agent in Plaintiff's cell that caused him pain as he remained restrained for more than a few hours, and there is ample case law, as noted above, that prolonged

---

this did not occur. Second, Plaintiff's reliance on MDOC Policy Directive 03.03.130 to establish his claim is misplaced because a violation of a prison policy is not a basis for a Section 1983 claim. *See Smith v. Davids*, No. 1:19-cv-402, 2021 WL 4451951, at *3 (W.D. Mich. Sept. 29, 2021) (citing, among others, *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001)).

exposure to a chemical agent can violate the Eighth Amendment. Accordingly, Ortiz is not entitled to qualified immunity on Plaintiff's claim. *See Berkshire v. Dahl*, 928 F.3d 520, 538 (6th Cir. 2019) (defendant who denied restrained prisoner's request to use the bathroom and left the prisoner to lay in his own urine and feces for several hours not entitled to qualified immunity).

## IV.  Conclusion

For the reasons set forth above, I recommend that the Court **deny** Defendant Ortiz's motion for summary judgment. (ECF No. 58.)

Dated: April 2, 2024                                  /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).